**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| MICHAEL WALTERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04-1287 |
| | ) |
| VILLAGE OF COLFAX, a municipal | ) |
| corporation; GARY MILTON, individually | ) |
| and as Mayor of Village of Colfax; and | ) |
| LAURENCE BAKER, | ) |
| | ) |
| Defendants. | ) |

**O R D E R**

Plaintiff Michael Walters ["Walters"] has brought this action against the Village of Colfax ["the Village"], Gary Milton ["Milton"], the Village Mayor, and Laurence Baker ["Baker], a member of the Village Board of Trustees, alleging that the defendants' conduct has violated his rights under 42 U.S.C. § 1983 and Illinois state law. Before the Court are cross Motions for Summary Judgment. For reasons set forth below, Defendants' Motion for Summary Judgment [#16] is GRANTED with respect to Walters' federal claims under 42 U.S.C. § 1983 and state law claim for breach of contract. Walters' Motion for Summary Judgment [#23] is DENIED. The court declines to retain jurisdiction over Walters' state law claim of "Unlawful Termination Under State Law" and therefore, it is DISMISSED without prejudice so that it may be re-filed in state court.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the Complaint presents federal questions involving deprivation of constitutional rights under 42 U.S.C. § 1983.

**BACKGROUND**

With very minor exception, the parties agree on the facts of this case and that summary judgment is appropriate. The dispute, of course, concerns who should prevail. Walters was first appointed to serve as Village of Colfax police chief in 1994. On June 3, 2002, Walters entered into an employment contract with the Village. The contract was also signed by the Village mayor at that time, Gordon Ehlers, and provided that Walters would serve as chief of police for a period of ten years, unless terminated for any of the reasons specified in the contract. This contract had been approved by the Village Board before its execution. However, under the Illinois Municipal Code, the Village was forbidden from entering into a contract whose duration would exceed the term of the mayor holding office at the time of the contract's execution. *See* 65 ILCS 5/3.1-30-5(c); 65 ILCS 5/8-1-7(b). In this case, Ehler's term began in 2001 and was set to expire in April 2005, so the contract's ten-year term well exceeded the statutory limit.

Certain Village positions, including street superintendent, village clerk, and police chief, are filled by annual appointment. During the first week of May each year, the Village Board would meet to vote on appointments. Though it is not entirely clear from the record, these appointments would apparently run through April 30 of the following year. In Walters' recollection over his many years as Police Chief, no Village official has ever failed to be reappointed at one of these meetings. Even though Walters' June 2002 employment contract purported to guarantee him employment through 2012, he was still officially "reappointed" at the May 2003 Board meeting, as he was each May before.

At a Village Board meeting on May 3, 2004, Ehlers cut short his term of office and resigned as Mayor. The Village Board of Trustees nominated defendant Milton to serve the remainder of Ehlers' term. Because of Ehlers' announcement, the May 3 meeting was recessed until May 13, when the appointments were to be considered. Walters testified that before the

2

May 13 meeting began, one of the Village police officers, Richie Cooper, informed Walters that certain Board members had asked Cooper to accept the position of police chief. At the meeting, Milton did in fact appoint Richie Cooper to serve as chief of police. The Board voted against his appointment. Later at the meeting, Walters was nominated to serve an additional one-year term as police chief; however, the majority of the Board voted against reappointing Walters as police chief. Apparently, the meeting was adjourned before anyone was voted and approved to serve as police chief. The parties dispute whether, under Illinois law and Village ordinances, the actions at the meeting constituted Walters' immediate termination or merely his non-reappointment to continue service in the upcoming fiscal year.

Before the May 2004 Board meetings, Walters had never been advised that his employment contract was not valid or that he had given cause for termination of his contract. Walters also alleges that before the May 13 Village Board meeting, Defendants Baker and Milton held meetings in private and discussed how to get rid of Walters.

Either at the meeting of May 13 or soon after, two Village police officers resigned for reasons not explained in the parties' pleadings.

Later on May 13, after the meeting, Walters received a call from a McLean County 9-1-1 dispatcher. Walters informed the dispatcher that the Village's police department had "just quit." The exchange was as follows:

> Dispatcher:   You've got an armed subject, two of them actually, at 320 E. Main Street. Two kids in the backyard of the residence shooting guns. They believe they are shooting squirrels and rabbits. Both are white males, approximately 12 years of age.
>
> Walters:   Well, you'll have to call the county because our police department just quit.
>
> Dispatcher:   Really?

3

  Walters:   Really.  So . . . you got a . . . get a deputy out here to get the two armed suspects.

  Dispatcher:  Thank you.

  Walters:   Bye.

Def.'s Exhibit F, at 3-4.

  Walters filed this action on August 23, 2004.  The heart of Walters' claims is that the 2002 employment contract with the Village was valid and created a constitutionally protected property interest in his position as police chief.  The complaint directs four counts against the Village, alleging (1) breach of contract, (2) deprivation of a property interest under contract in violation of 42 U.S.C. § 1983, (3) unlawful termination under Illinois law, and (4) deprivation of a property interest under state law in violation of 42 U.S.C. § 1983.  The complaint directs one count against Milton, alleging that he terminated Walters and deprived Walters of his constitutionally protected property interest in employment in violation of 42 U.S.C. § 1983.  The complaint also directs one count against Baker under 42 U.S.C. § 1983, alleging that he conspired to terminate Walters in violation of Walters'  constitutionally protected interest in his employment.

  Defendants collectively moved for Summary Judgment on August 10, 2006, arguing, in part, that the operation of various sections of the Illinois code and interpretive case law entitle them to judgment as a matter of law because the employment contract was invalid in that the Village could not contract to employ Walters beyond Ehlers' term of office.  Defendants also argue that the undisputed material facts establish that Walters was not terminated,  but rather that he was merely not reappointed and that his actions after his non-reappointment constitute abandonment of his position.  Defendants also claim absolute legislative immunity, or in the alternative, qualified immunity, for Milton and Baker.   On September 1, 2006, Walters filed his

4

response to Defendants' Motion, and his own cross Motion for Summary Judgment, arguing instead that the application of the law to the undisputed facts warrants judgment in his favor. The matter is now fully briefed, and this Order follows.

## STANDARD OF REVIEW

Summary judgment should be granted where "the pleadings and other admissible evidence show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing that there are no disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. In other words, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be

5

denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

## DISCUSSION

### A. Walters' Claims under 42 U.S.C. § 1983

The Fourteenth Amendment prohibits states and local government units from depriving a person of life, liberty, or property without due process of law. U.S. Const. Amend. XIV, § 1. As something of a threshold matter, then, Walters must establish that he has a protectable property interest in his continued employment to sustain his claims under § 1983. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972) (The Court must first determine "the *nature* of the interest at stake . . . to see if the interest is within the Fourteenth Amendment's protection of liberty and property.").

To have a property interest in continued employment, "a person clearly must have more than an abstract need or desire for it." *Id*. at 577. He must have more than a "unilateral expectation" of continued employment, but rather must have some "legitimate claim of entitlement" to it. *Id*. The Seventh Circuit has explained that "[p]roperty interests in employment may be created by express or implied contracts, municipal ordinances or state laws...." *Farmer v. Lane*, 864 F.2d 473, 478 (1988). Here, Defendants argue that they are entitled to summary judgment because neither Walters' 2002 employment nor the operative Illinois statutes and Village ordinances provide Walters with a protectable property interest.

### 1. The 2002 employment contract

Defendants argue that because the duration term in the 2002 contract violates Village Ordinances and municipal law, the 2002 contract was "*ultra vires* and, in its entirety, *void ab*

6

*initio*." Def.'s Mtn., at 11. Therefore, Defendants' argument asserts, there was no contract to breach nor any property interest of which Walters could be deprived under § 1983.

As a general rule, municipalities are limited to only those powers that are given to them by constitution and statute. *McMahon v. City of Chicago*, 789 N.E.2d 347, 350 (Ill. App. 1st Dist. 2003). According, a municipality's power to contract is limited, and it cannot be bound by a contract that does not comport with the statutes that govern it. *See id.* Moreover, a party who contracts with a municipal corporation is presumed under the law to know the limitations on the contractual power of the city officials. *Id.; see also Nielsen-Massey Vanillas, Inc. v. City of Waukegan*, 657 N.E.2d 1201, 1207 (Ill. App. 2d Dist. 1995) ("A party contracting with a city is presume to know whether the city is prohibited from making a contract, and a contract made in violation [of statute] is *void ab initio* and cannot be enforced by estoppel as ratification.")"

In this case, there are several regulations at play. Section 5/3.1-30-5 of the Illinois Municipal Code provides that a mayor or president may appoint municipal officers, with the advice and consent of the city council or the board of trustees, and that the city board may prescribe that officer's duties and the powers and his term of office, "but the term of office, except as otherwise expressly provided in this Code, shall not exceed that of the mayor or president of the municipality." 65 ILCS 5/3.1-30-5. Village of Colfax Ordinance 3.08 supplements the Illinois statute regarding appointments:

> 3.08(a) *Appointments*: The President, with the consent of the Board of Trustees shall make appointments to fill all appointive offices. . . .
>
> 3.08(b) *Vacancies*: Every appointive officer of the village shall hold office for a term of one year or until his successor is appointed and qualified unless it is otherwise provided by provision of this code. Employees selected shall serve so long as their services are desired.

With respect to contracting power, Section 5/8-1-7 of the Illinois code provides that the

7

corporate authorities of a municipality may enter into certain contracts relating to the employment of municipal officers, including police chief, and that the term of these contracts may exceed one year. 65 ILCS 5/8-1-7(b). However, this same section reiterates that the term of the employment contract may not exceed "the term of the mayor or president holding office at the time the contract is executed." *Id*.

Defendants' argument that Walters' contract was entirely invalid relies principally on the Illinois case of *Grassini v. DuPage Township*, 179 Ill.App.3d 614 (3d Dist. 1996). In *Grassini*, the plaintiff had entered into a four-year employment agreement with the Trustees of the DuPage Township, which at the time, was governed by the Illinois Township Code, 60 ILCS 1/1-1 *et seq*. *Id*. at 617. Shortly after the contract's execution, newly elected trustees, including a new township supervisor, replaced the trustees who authorized Grassini's contract. *Id*. Unlike the Illinois Municipal Code, the Illinois Township Code did not explicitly limit the period over which an employment contract may extend. *Id*. at 618. The court's task, then, was to "determine whether such limitation should be read into the Township Code." *Id*.

The court found that "it is contrary to the effective administration of a political subdivision to allow elected officials to tie the hands of their successors with respect to the decision regarding the welfare of the subdivision," influenced, in part, by the Illinois legislature's enactment of such a limitation in the section of the Municipal Code at issue in Walters' case, §8-1-7(b). *Id*. at 619-20. Ultimately, the court concluded that because "Grassini's employment was to extend beyond these officials' remaining period of service, the contract was outside the Township's authority and thus void *ab initio*." *Id*. at 620; *see also Cannizzo v. Berwyn Township 708 Community Mental Health Bd.*, 741 N.E.2d 1067 (Ill. App. 5th Dist. 2000) (following *Grassini* and finding an employment contract for a term that extended

beyond the remaining term of board members' service to be ultra vires). Because the Grassini's employment contract was void, it could not have created a property interest to which the protections of the Fourteenth Amendment would attach. *Grassini*, 179 Ill. App. 3d at 621.

In response, Walters correctly points out that cases like *Grassini* and *Cannizzo* don't apply as neatly to the circumstances of his own case as Defendants suggest. In *Grassini* and *Cannizzo*, the plaintiffs had sought to enforce their respective contracts outside the time period authorized by law, in other words, *after* the appointing authority/authorities had left office. Here, Walters represents that he has not sought to take advantage of the contract after the expiration of Mayor Ehlers' expected term of office, and his "claims of damage have assumed that he was not entitled to claim his position beyond that term." Pl.'s Mtn., at 7. Such a distinction is arguably crucial to Walters' main argument – that he in entitled to summary judgment because of the severability clause in his employment contract.

The final paragraph of the contract between Walters and Village provides that "[i]n the unforeseen event that any provision of this agreement is found to be void, it shall not affect the other provisions of this contractual agreement." Walters has asked this court to give effect to the severability clause, in essence, to find that the portion of his contract that would not violate the statute (the first approximate 2.8 years when appointing-Mayor Ehlers was still to hold office) is valid and that remaining 7.2 years outside of the duration authorized by statute is the only invalid part, and that invalid part should be severed and remaining "good" part should be retained.

Walters urges the court to give effect to the severability clause because the clause represents the will of the parties and doing so would not violate public policy. Furthermore, Walters argues that the law permits courts to enforce a contract with a portion severed when the severed portion does not go the contract's essence, and represents that "there is nothing to

9

indicate that it was essential to Walters that he have a ten year contract, or any contract that extended beyond Mayor Ehlers' term of office." Pl.'s Mtn., at 9. The Defendants respond that the severability clause has no effect on the instant facts because, under Illinois law, any municipal contract that violates the Code is *ultra vires* and *void ab intitio*, and therefore, "the severance clause does not effectively remedy the 2002 contract's status as utterly void." Def's Mtn., at 16.

Does the law dictate that Walters' entire contract must be void from the outset, or is this a situation where only a portion of a contract is illegal and possibly capable of severance? While Walters hasn't pointed to any cases where a court has severed a portion of comparable municipal contract whose duration violates statutory limits, there is some authority that arguably supports his theory.[1] In evaluating the effect of the severance clause on this employment contract, the Court looks first to Illinois law on the subject. *Grassini* and *Cannizzo* don't clearly address this narrow severability question because the facts of those cases did not demand such precise analysis. Neither party has cited any Illinois case law that examines the effect of a severability clause on a municipal contract containing a duration term that violates the municipal code, and the Court notes that there is minimal case law on the subject in Illinois or any other jurisdiction. However, there is some authority from other jurisdictions that the Court considers analogous and helpful to the proper resolution of this case.

Though it is an old case, *City of Wellston v. Morgan*, 52 N.E. 127 (Ohio 1898), is especially relevant. In that case, the City has passed an ordinance wherein it agreed to pay the plaintiff to provide lighting for City streets for a period of 99 years. *Id*. at 129. By statute, the

---

[1] *See* 10A EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 29.95 (3d ed. 1990) ("The general and well-establish rule of the law of contracts, that where an agreement is illegal in part, the part which is good may be enforced, provided it can be separated from the part which is bad, applies to contract made by municipal corporations.");

City did have the power to contract for the lighting of its streets and other public grounds, but only for a term not to exceed 10 years. *Id*. at 130. The Ohio court was confronted with the argument that the agreement in the ordinance was not *absolutely* void, but might be treated as good for a term of 10 years, "since the subject matter is not ultra vires, and inasmuch as 99 years is greater than 10 years, and must include it; and hence the contract, in that way, may be supported." *Id*. at 130. In evaluating this proposition, the court looked to the purpose of such statutes:

> [The above argument] implies that the purpose of the law is only to prevent the enforcement of contracts made in violation of its terms, and not to prevent the making of such contracts. Now, the language of the statute is that the municipalities referred to shall have power to contract for light for any term not exceeding 10 years. This implies, with as much force as if it had been expressly stated, that the municipality shall not have power to contract for any term longer than 10 years, and the natural inference, we think, that the purpose is to inhibit such contracts entirely, for the only certain way of insuring their non-enforcement is to prevent their attempted execution.

*Id*. The Ohio court recognized another reason that such contracts should not be enforceable, even for the statutorily-authorized period:

> But another objection seems equally fatal to the proposition. We are dealing with the subject of contract. It implies parties, and a meeting of the minds. The paper presented undertakes to stipulate for the furnishing of light, and an agreed price therefore, for a period of 99 years. The proposition is that we now treat it as a contract for 10 years; that is, that the court shall make a new contract for the parties for 10 years, and then enforce it. How can we say that the company would have incurred such great expense and outlay of money and labor, which the petition declares was incurred, for the period of 10 years only? And if the court were of the opinion that probably the company would have been willing to so contract, where is there any authority in the court to now alter the terms that they did agree upon, and then enforce them as changed? We are of the opinion that neither in law nor reason is there any ground for such a proposition.

*Id*. A factually similar dispute was raised in *Gaslight & Coke Co. of New Albany v. City of New Albany*, 59 N.E. 176 (Ind. 1901). There, the parties entered into a gas lighting contract for a term of 23 years, despite a statute forbidding the city to contract for lighting for a term exceeding 10

11

years. The court first recognized the general rule that "[w]hen a contract is or can be so separated in parts as to constitute two agreements, one illegal and the other legal, the latter may be enforced, and the transaction pro tanto sustained." *Id*. at 179. Still, the court found that, regardless of *when* the plaintiff had sought to enforce the contract, the contract was entirely void.

In reaching its decision, the Indiana court explained that when city officials "attempt an act which is beyond the limit of their power, the act has no official sanction, and is no more effectual than if performed by nonofficial persons. As a municipal act it is wholly void, and, being void, nothing of substance may flow from it." *Id*. The court concluded that where "a municipal council is authorized by statute to contract for a period not exceeding 10 years, its contract for 20 years or for an indefinite time cannot be sustained as a contract for 10 years, but is entirely void." *Id*.

Much more recently, the Iowa Supreme Court rejected an argument similar to the one Walters has raised regarding the effect of the severability clause. In *Miller v. Marshall County*, 641 N.W.2d 742 (Iowa 2002), the plaintiff entered into a lease agreement with the county board of supervisors in which he agreed to rent his building to the board for a period of 10 years, with an annual rent of $424,666.00. *Id* at 745. The court found that the board did not have authority to enter into the lease because Iowa's home rule statute required the county to follow special notice and hearing procedures (which it did not complete) before entering into a lease where the principal, aggregate amount to be paid under the lease exceeds $500,000.00. *Id*. at 751. The plaintiff argued that even if the lease was found invalid, the court should enforce the contract's separability clause to allow him to recover up to $500,000.00, since the board could have entered into a lease for up to this amount without following the special procedures. *See* Brief of Plaintiff-Appellant at *3-4, *Miller*, 641 N.W.2d 742 (No. 00-0341), 2000 WL 35367355. The court rejected this argument, stating, "[b]ecause the contract in its entirety is void, there is

nothing left to sever . . . . neither the separability clause in the lease agreement nor the general doctrine of separability can save the municipal contract in this case." *Miller*, 641 N.W.2d at 752.

Here, Walters has presented the Court with something of a "chicken or the egg" quandry. Is the contract only "partially illegal," that is, can the severability clause be first given effect to eliminate the "bad" part of the contract – the latter 7.5 years or so which extended beyond Mayor Ehlers' term of office – thereby retaining a "good" contract whose terms do not violate the Code and therefore is not ultra vires and void?  Or, must the contract be found entirely void from the beginning as an attempt to exceed municipal power conferred by statute, and therefore there is nothing valid that could possibly be severed?

The reasoning of the opinions in *Wellston*, *Gaslight & Coke Co.*, and *Miller* is both persuasive and relevant here.  Walters has essentially urged this court to apply the severability contract to rewrite the term of his employment contract so that it does not violate the statue.  It may be safe to assume that the Mayor and Board Members would have approved a contract for 2.8 years – or whatever the precise amount of time remaining on Mayor Ehlers' term when he executed Walters' employment contract – if they approved a contract for 10 years.  However, the Court does not find it proper to reform the contract in contravention of the procedures mandated by the Illinois municipal code, especially because "duration" is generally regarded as an essential term of an employment contract under Illinois law.  *See Pillay v. G.C. Services Ltd. Partnership,* 1998 WL 242135, at *5 (N.D.Ill.1998).

Furthermore, like the statute in *Wellston* restricting the City's power to enter into a contracts beyond a 10-year term, the purpose of 65 ILCS 5/8-1-7 is to "inhibit such contracts [that exceed the mayor's term] entirely, for the only certain way of insuring their non-enforcement is to prevent their execution."  52 N.E. at 130.  Such a finding is consistent with the Illinois courts' decisions in *Grassini* and *Cannizzo*.  There, the Illinois appellate courts state that

13

the contracts were void *from the moment of execution*. There is no contract, therefore, from which any term can be severed.

Walters also argues that the Village should be estopped from denying the validity of the contract. Generally, a contract that is void ab initio cannot be enforced by estoppel or later ratified. *Nielsen-Massey Vanillas*, 657 N.E.2d at 1207; *Ryan v. Warren Township High Sch. Dist. No. 121*, 510 N.E.2d 911, 912 (Ill. App. 2d Dist. 1987); 10 MCQUILLIN § 29.104.30. "It is also irrelevant that the other party has detrimentally relied upon the municipal contract, by fully or partially performing the contract or making expenditures, even if the municipality benefitted from the other party's reliance." *Miller*, 641 N.W.2d at 750. The rationale for this seemingly harsh principle is that those who contract with the municipality "do so at their peril when they fail to take notice of the limits of the agent's authority." 10A MCQUILLIN § 20.104.30.

Despite the general rules, courts have, in certain situations, enforced municipal contract on estoppel principles. Walters directs this Court to the Illinois decision of *Stahelin v. Board of Education*, 230 N.E.2d 465 (Ill. App. 2d Dist. 1967). There, the court stated,

> Whether the doctrine of estoppel may be applied against a municipal corporation in a given case will be determined from a consideration of all the circumstances of the case. If under all of the circumstances, the affirmative acts of the public body have created a situation where it would be inequitable and unjust to permit it to deny what it has done or permitted to be done, the doctrine of estoppel may be applied against it.

230 N.E.2d at 471. A provision of the otherwise-valid construction contract at issue provided for the payment of "extras." *Id*. at 468. However, a section of the school code provided that for any expenditure of money, a "yeas and nays" vote must be taken and entered on the record of school board minutes, and this was never done with respect to "extras." *Id*. Because the school board had the *powe*r to contract for extras, and clearly intended to allow for extras under the contract, but had failed to put it to a technical recorded vote of yeas and nays, the court held that the

14

defendant school board had to pay for construction work the plaintiff had already completed and billed as "extras." *Id*. at 472.

In an employment contract case factually similar to Walters', however, the Illinois Appellate Court persuasively distinguished *Stahelin*:

> *Stahelin* was a case involving a school district contracting for the construction of a school. The appellate court held that a municipality could not gain an "unconscionalbe advantage" over the other party by raising the defense that the contract was void. However, the contract involved in Stahelin was a construction contract and the appellate court held that the school board had to pay for the work that had already been performed. Here plaintiff was paid for the work he performed. Plaintiff's complaint is that he was not allowed to continue his employment. Thus, *Stahelin* was inapposite to this case.

*Cannizzo v. Berwyn Tp. 708 Community Mental Health Bd.*, 741 N.E.2d 1067, 1073 (Ill. App. 5th Dist. 2000).

This Court agrees that there is a cognizable difference between estopping a municipality from gaining an unconscionable advantage by refusing to pay for services that had already been performed and estopping it from denying a contract that it never had authority to make. *Stahelin* would be far more helpful to Walters, and his injury truly unconscionable, if the Village were refusing to pay him for services that he had already rendered. Moreover, no other courts have followed *Stahelin* on this point. The weight of the authority establishes that the Village is not estopped from denying the validity of the 2002 employment contract

In total, the 2002 employment contract was completely void and incapable of severance, and non-enforceable under principles of estoppel. Therefore, for all intents and purposes, it did not exist and cannot provide Walters with a protectable property interest to support his § 1983 claim.

### 2. Illinois statutes and Village ordinances

Without "a contract to stand on," so to speak, or any allegations of some other agreement affecting the terms of his employment, Walters must establish that it is the Illinois statutes and/or Village ordinances that provide him with a protectable property interest. Walters repeatedly argues that under Section 3.1-35-10 of the Code, "police chiefs, once appointed by a village president, continue to hold their position until the end of the village president's term of office." Complaint, at ¶ 26; *see also* Pl.'s Mtn for Summ. J., at 12-13. Prior to the end of that time, Walters argues, police chiefs can be terminated only in conformity with the provisions of Section 3.1-35-10. Section 3.1-35-10, in its entirety, provides as follows:

> Mayor or president; removal of appointed officer. Except where otherwise provided by statute, the mayor or president may remove any officer appointed by the mayor or president under this Code, on any written charge, whenever the mayor or president is of the opinion that the interests of the municipality demand removal. The mayor or president shall report the reasons for the removal to the corporate authorities at a meeting to be held not less than 5 nor more than 10 days after removal. If the mayor or president fails or reguses to report to the corporate authorities the reasons for the removal, or if the corporate authorities by a two-thirds vote of all members authorized by law to be elected disapprove of the removal, the officer thereupon shall be restored to the office from which the officer was removed. The vote shall be by yeas and nays, which shall be entered upon the journal of the corporate authorities. Upon restoration, the officer shall give a new bond and take a new oath of office. No officer shall be removed a second time for the same offense.

The Court does not agree that the text of Section 3.1-35-10 of the Code supports Walters' contention that a police chief, once appointed, would necessarily hold his position until the end of the Village mayor's expected term of office. In fact, the text of this Section only addresses procedures for removal from office, implicitly removal before the end of term of appointment, and does not state anything about the enforceable length of terms of appointment. Walters does not cite any case to support his theory that this Section of the code granted him a specific tenure of employment beyond the default 1-year term of appointment as provided in Village Ordinance 3.08(b) ("Every appointive officer of the village shall hold office for a term of one year or until

16

his successor is appointed and qualified unless it is otherwise provided by provision of this code."). The Court has not been able to locate any such case.

The better interpretation of the operative statutes and ordinances, as applied to the "contractless" facts of this case, is that Walters was appointed to serve as police chief for a one-year term. After all, every single May since Walters first began serving as police chief, the Board went through the process of reappointing him. In May 2004, when the Board did not vote to reappoint Walters, his term of office was not artificially cut short. The statutes and ordinances do not imply nor promise anything beyond a one-year term, or "until [a] successor is appointed and qualified." Village of Colfax Ordinance 3.08(b).

It is worth noting that this District recently and explicitly concluded that Section 5/3.1-35-10 does not create a constitutionally protected property interest in continued employment. *Miyler v. Village of East Galesburg*, No. 04-1128, 2006 WL 2547991 (C.D. Ill. Aug. 31, 2006). In *Miyler*, the Court recognized that "in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon procedural guarantees of state law or local ordinance." *Id*. at *3 (quoting *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989)). The "procedural" statute must provide some substantive criteria limiting the state's discretion. *Id*. If the statute or regulation "merely delimits what procedures must be followed" to terminate an employee, "then it does not contain the requisite substantive predicate." *Id*. Under this framework, the Court went on to conclude that Section 3.1-35-10 "contains absolutely no substantive predicates," and could not create a constitutionally protected property interest continued employment. *Id*. at *4.

**3. Conclusion**

17

Because Walters has failed to establish that he had a protectable property interest in continued employment with the Village, the Defendants are entitled to summary judgment on Counts II, IV, V, VI of Walters' Complaint.  In their Motion, Defendants also argue that they are entitled to summary judgment because Walters was not terminated in violation of any 42 U.S.C. § 1983 because he was not *terminated* by the Board's vote against his reappointment; rather, Village Ordinance 3.08(b) provided that Walters' term was to continue "until his successor [was] appointed and qualified," and therefore, his failure to respond to the 9-1-1 emergency call constituted an abandonment of his position as Police chief.  This argument may present some dispute of material fact; however, the Court need not address it, nor the argument that defendants Milton and Baker are protected by absolute or qualified immunity, because Walters' had no protectable property interest in continued employment.  With respect to Walters' claims under § 1983, Defendants' Motion for Summary Judgment is GRANTED.

### B. Remaining State Law Claims

Walters has brought two claims under state law – Count I, for breach of contract, and Count III, for "Unlawful Termination under State Law."  Title 28 U.S.C. § 1367 provides that a district court "may decline to exercise supplemental jurisdiction" over pendent state-law claims if the court has dismissed all claims over which it has jurisdiction.  *Wright v. Associated Ins. Co. Inc.*, 29 F.3d 1244, 1250 (7th Cir. 1994) (citing 28 U.S.C. § 1367(c)(3)).  A district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims.  *Id.* at 1251 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994).  Finally, as a general rule, when all federal claims are dismissed, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on

the merits. *Wright*, 29 F.3d at 1250 (citing *United Mine Worker of Am. v. Gibbs*, 383 U.S. 715, 726 (1996)).

### 1. Breach of Contract

As explained above, under Illinois state law, the contract between the Walters and the Village was ultra vires and therefore void ab initio, in its entirety. Stated another way, there was no contract to breach. In the interests of judicial economy, this Court sees no reason to relinquish jurisdiction over the breach of contract claim. For reasons already stated, Defendants' Motion for Summary Judgment with respect to this claim is granted.

### 2. Unlawful Termination Under State Law

The only remaining Count in Walters' complaint is brought against the Village for "Unlawful Termination Under State Law." The allegations of the Count state, in summary, that Walters was terminated by the Village but that the Mayor never gave Walters a statement of reasons that demanded his removal, and the Mayor never presented to the Board a statement of charges against Walters, as required under 65 ILCS § 3.1-35-10. Under this Count, Walters seeks reinstatement, back pay, and costs of suit. While this Court doubts that Walters could establish such a claim even if a cause of action under this section exists, such a determination is most appropriate for a state court, and therefore, this Court declines to exercise pendent jurisdiction over Count III of Walters' complaint. It is therefore dismissed without prejudice so that it may be re-filed in state court.

## CONCLUSION

For the reasons set forth above, Walters' Motion for Summary Judgment [#23] is DENIED. Defendants' Motion for Summary Judgment [#16] with respect to Walters' federal

claims under § 1983 and state law claim of breach of contract are GRANTED. The Court declines to retain jurisdiction over Walters' state law claim of "Unlawful Termination Under State Law" and therefore, it is DISMISSED without prejudice so that it may be re-filed in state court. This matter is now TERMINATED.

                                                Entered this 11th day of December, 2006

                                                <u>s/ Michael M. Mihm</u>
                                                Michael M. Mihm
                                                United States District Judge